UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert W. Parker

    v.                                        Civ. No. 25-cv-59-JL-AJ

Marilyn Jarvis, et al.

**REPORT AND RECOMMENDATION**

Self-represented plaintiff Robert W. Parker, appearing in forma pauperis, has sued several defendants in connection with a landlord-tenant dispute and a related criminal case in New Hampshire. Mr. Parker's complaint (Doc. No. 1) is before the undersigned Magistrate Judge for preliminary review, pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915(e)(2).

**Standard of Review**

The magistrate judge conducts a preliminary review of pleadings, like Mr. Parker's, that are filed in forma pauperis. See LR 4.3(d). The magistrate judge may recommend to the district judge that one or more claims be dismissed if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d). In conducting its preliminary review, the court construes pro se complaints liberally. See Erickson

v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). An unrepresented plaintiff's complaint must be read liberally in this regard, see Donovan v. Maine, 276 F.3d 87, 94 (1st Cir. 2002), but must still contain "the crucial detail of who, what, when, where, and how" in order to provide fair notice of what the claims are and the grounds upon which they rest. Byrne v. Maryland, No. 1:20-cv-00036-GZS, 2020 WL 1317731, at *5 (D. Me. Mar. 20, 2020) (rec. dec.), aff'd, 2020 WL 2202441 (D. Me. May 6, 2020).

## Background[1]

Mr. Parker's complaint is somewhat disorganized and difficult to follow. It appears that Mr. Parker had an agreement in 2022 to rent a residence from defendant Marilyn Jarvis in Glen, New Hampshire. Compl. (Doc. No. 1) at 2. In mid-2022, Ms. Jarvis attempted to evict Mr. Parker. On July 22, 2022, a New

---

[1] In addition to relying on the allegations in Mr. Parker's complaint (Doc. No. 1), the court has also considered documents he submitted on a flash drive with his complaint and a supplemental filing (Doc. No. 4). The documents on the flash drive contain no docket number reference.

Hampshire judge denied Ms. Jarvis's request for a Writ of Possession, finding that the eviction notice she served on Mr. Parker did not comply with New Hampshire's statutory requirements. See N.H. Rev. Stat. Ann. § 540:5.[2] Mr. Parker alleges that defendant Paula Graham, a neighbor, had warned him about Ms. Jarvis, because of her "professional contacts" with the police. Compl. (Doc. No. 1) at 3. In addition, Ms. Graham wrote a letter dated July 22, 2022, addressed to "Dear Your Honor" – which the court construes as related to the landlord-tenant case – in which she recounted telling neighbors that Ms. Jarvis had suffered a heart attack. According to Ms. Graham's letter, one neighbor "quoted Mr. Parker as saying, 'The old lady is on her death bed, if she croaks they'll never get me out of here.'"

On July 30, 2022, Mr. Parker entered the residence and Ms. Jarvis was there, having let herself in. Mr. Parker called the police. Bartlett Police Officer Brian Moffitt[3] responded. According to the police report, Mr. Parker told him that Ms. Jarvis was in his house illegally, the court having previously

---

[2] The court also denied Mr. Parker's counterclaim for damages, finding that he had not suffered damages.

[3] Though the complaint spells the officer's name "Moffit," the police report Mr. Parker filed with his complaint uses "Moffitt." The court uses the latter spelling, as it more likely the correct one.

denied her eviction attempt. Officer Moffitt reported that Mr. Parker appeared "highly agitated," was speaking very loud and swearing," was red-faced and "sweating heavily," and had a "significant odor of alcohol on his breath and about his person."

Although Officer Moffitt asked Mr. Parker to wait outside while he spoke to Ms. Jarvis, he instead entered the residence with the officer. Ms. Jarvis told him that she thought Mr. Parker had moved out. Mr. Parker remained angry and was "acting aggressive and threatening towards" Ms. Jarvis. Mr. Parker told Officer Moffitt that he had paid rent through the end of the month and asked Moffitt, using profanity, why he hadn't arrested Ms. Jarvis. The officer explained that he hadn't investigated the situation yet and that Mr. Parker was interfering with his ability to do so.

Mr. Parker then provided Officer Moffitt with a copy of the Landlord/Tenant judgment, but, while Moffitt was trying to review it, Mr. Parker began swearing at Ms. Jarvis and demanding that Officer Moffitt call a supervisor. While Officer Moffitt reviewed a text message from defendant Carol Bridges that Ms. Jarvis had relied upon to conclude that Mr. Parker was moving out, Mr. Parker made himself a drink, ignoring Officer Moffit's request that he refrain from doing so until his investigation was complete.

4

Officer Moffitt's report then notes that Mr. Parker denied telling anyone he was moving out. Mr. Parker then walked to a neighbor's door, and "pounded on it asking them to mediate the situation." Moffitt told Parker that that he should speak with Moffitt "and allow [him] to work through the situation." The report then continues, "Parker began walking around the residence pointing . . ." Mr. Parker did not include the remainder of the police report with his filing.

Mr. Parker alleges in his complaint that Officer Moffitt "entered a private property and proceeded to beat [him] physically," even though he was on crutches from a previous injury. Compl. (Doc. No. 1) at 4. In addition, Mr. Parker alleges that other officers – defendants McKee and True -- "ripped him through the backseat of the cruiser" causing him injury. Id.

On October 21, 2022, a Carroll County, New Hampshire grand jury indicted Mr. Parker on one charge of simple assault on a police officer, in violation of N.H. Rev. Stat. Ann. § 631-2:a and 651:6. Specifically, the indictment stated that, on July 30, 2024, Mr. Parker "caused unprivileged physical contact with Officer Brian Moffitt, by kicking him in the shoulder while Officer Moffitt was attempting to secure him in the police cruiser after informing him that he was under arrest . . . ." Defendant Erin Ferry, Esq. was his defense counsel during a

5

portion of the case, which remains pending as of this date. See State v. Robert Parker, Case No. 212-2022-CR-00252 (Carroll Cty. Super. Ct.).

Mr. Parker commenced this lawsuit on October 31, 2024, in the District of Massachusetts. The case was transferred to this court on February 6, 2025. (Doc. Nos. 5 and 7).

## Claims

Liberally construing Mr. Parker's complaint, as the court is required to do, he asserts the following claims:

1. Officers Moffitt, McKee and True violated Mr. Parker's Fourth Amendment right not to be subjected to an arrest involving excessive force when they injured Mr. Parker during his arrest, rendering Officer Moffitt liable under 42 U.S.C. § 1983.

2. Based on the same facts as Claim 1, Officers Moffitt, True and McKee are liable to Mr. Parker for the state law torts of (a) assault and (b) battery.

3. Defendant Erin Ferry is liable to Mr. Parker for legal malpractice.

4. Defendant Paula Graham is liable to Mr. Parker for defamation of character.

5. Defendant Bartlett Police Chief Keaton is liable to Mr. Parker under a theory of supervisory liability.

**Discussion**

A. Fourth Amendment Excessive Force Claim (Claim 1)

In order to prevail on a Fourth Amendment excessive force claim arising from a use of force incident to an arrest, a plaintiff must establish that the defendant's actions . . . were objectively unreasonable in light of the circumstances and the facts known to the officer at the time. This showing must take into account the reasonableness of the officer's actions, viewed from the perspective of a prototypical officer confronted with the same or similar circumstances. All of the attendant facts must be considered. Calvi v. Knox Cty., 470 F.3d 422, 428 (1st Cir. 2006) (citations omitted).

The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989) (citations omitted). The facts alleged in the complaint state a Fourth Amendment excessive force claim against the officers sufficiently to proceed at this time.

B. Assault and Battery (Claim 2)

A successful assault claim requires that "(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent

7

apprehension of such contact." King v. Friends of Kelly Ayotte, 860 F.Supp.2d 118, 129–30 (D.N.H. 2012) (quoting Yale v. Town of Allenstown, 969 F. Supp. 798, 801 (D.N.H. 1997) (citing Restatement (Second) of Torts § 21(1) (1965))). A defendant may be held liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F.Supp.2d 84, 94 (D.N.H. 2011) (quoting United Nat'l Ins. Co. v. Penuche's, Inc., 128 F.3d 28, 32 (1st Cir. 1997) (citing Restatement (Second) of Torts § 13 (1977))).

The facts alleged in the complaint state claims for assault and battery sufficiently to proceed at this time. Accordingly, the court has directed service of the complaint against Officers Moffitt, True, and McKee as to Claims 1 and 2, in an Order issued this date.

C.  Legal Malpractice (Claim 3)

A claim of legal malpractice requires proof "(1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach." Moore v. Grau, 171 N.H. 190, 196, 193 A.3d 272,

277 (2018) (quoting Yager v. Clauson, 166 N.H. 570, 572-73, 101 A.3d 6 (2014)).

As previously noted, Mr. Parker's criminal case has not concluded. As such, he cannot, at this time, demonstrate any harm from any alleged breach of duty. Accordingly, the district judge should dismiss Claim 3 – the only claim asserted against Attorney Ferry -- without prejudice.

D. Defamation (Claim 4)

To state a cause of action for defamation, the plaintiff must allege facts that would show that the defendant failed to exercise reasonable care in publishing false and defamatory statements of fact about the plaintiff to a third party. See Automated Transactions v. Am. Bankers Ass'n, 172 N.H. 528, 532, 216 A.3d 71 (2019). Mr. Parker asserts in his complaint that Ms. Graham wrote to the court that he "wished [Ms. Jarvis] was deceased." Compl. (Doc. No. 1) at 3 But the actual letter from Ms. Graham, quoted above, reports only what a neighbor told Ms. Graham, and does not mention such a wish.  Moreover, "[s]tatements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." Provencher v. Buzzell-Plourde Assocs., 142 N.H. 848, 853, 711 A.2d 251, 255 (1998). As it appears that Ms. Graham's letter was written to the landlord-

9

tenant court, the communication is privileged and the district judge should therefore dismiss Claim No. 4 against Ms. Graham.

E. Supervisory Liability (Claim 5)

As there is no indication that Chief Keaton was at the scene of his arrest, Mr. Parker may be trying to hold him liable for the actions of the three officers. But "[t]he liability of a supervisor "must be premised on his or her own acts or omissions and does not attach automatically even if a subordinate is found liable." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021). The only act Mr. Parker alleges is that "Chief Keaton denied me the police's efforts to find out the truth on Audio file."  This is insufficient to state a valid claim for relief. Accordingly, the district judge should dismiss this claim.

E. Other Defendants

Though Mr. Parker names other defendants in his complaint, he fails to state a cognizable cause of action against any of them.

1. Carol Bridges

Mr. Parker alleges that Ms. Bridges sent the text message to Ms. Jarvis that led the latter to believe that Mr. Parker was moving out. This fails to assert a cognizable cause of action. Ms. Bridges should be dismissed from this lawsuit.

2. Ralph Ianuzzi

In an attachment to the complaint, Mr. Parker alleges that

10

Mr. Ianuzzi, who is 82 years old, was Mr. Parker's former landlord in Massachusetts, whose wife put Mr. Parker in touch with Ms. Jarvis in order to find housing. In the complaint, Mr. Parker states that Mr. Iannuzzi "[c]ontinues contacting me checking on everything for evil police and landlord. Sent her there with no info or knowledge. I'm not sure his motives." These allegations fail to state a cognizable cause of action. Mr. Ianuzzi should therefore be dismissed from this suit.

## Conclusion

Based on the foregoing, the district judge should dismiss Claims 3, 4, and 5 identified above. Claim 3 should be dismissed without prejudice. If this recommendation is adopted, defendants Bridges, Keaton, Ferry, Graham, and Iannuzzi will no longer be defendants in this case.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right

11

to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Date: May 8, 2025

_____
Andrea K. Johnstone
U.S. Magistrate Judge

cc: Robert W. Parker, pro se